**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION**

| | | |
|---|---|---|
| **SHELIA K. FERGUSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 6:13-CV-47** |
| | ) | |
| **CAROLYN W. COLVIN,** | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

Plaintiff Shelia K. Ferguson ("Ferguson") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") determining that she was not disabled and therefore not eligible for supplemental security income ("SSI") under the Social Security Act ("Act"). 42 U.S.C. §§ 1381–1383f. Ferguson, acting *pro se*, filed a brief noting her medical conditions, which the court liberally construes as a general argument that the decision of the Administrative Law Judge ("ALJ") is not supported by substantial evidence. Ferguson does not address any specific facts the ALJ improperly failed to consider or wrongfully rejected. Rather, Ferguson's submissions merely recite why she believes she is disabled. Ferguson also argued during the hearing that a subsequent decision finding her disabled and its underlying evidence constitute new and material evidence warranting remand of this case pursuant to sentence six of 42 U.S.C. § 405(g). I conclude that substantial evidence supports the ALJ's decision as a whole, and that the evidence underlying the subsequent decision does not warrant a remand of this action. Accordingly, I **RECOMMEND GRANTING** the Commissioner's Motion for Summary Judgment. Dkt. No. 18.

1

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Ferguson failed to demonstrate that she was disabled under the Act.[1] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Before me is Ferguson's second of three applications for disability benefits. Ferguson initially sought benefits in an application dated August 6, 2007 which was denied upon final reconsideration on August 28, 2008. Dkt. No. 33, p. 2. Ferguson did not seek further review of the denial of this claim before an ALJ.

Ferguson protectively filed her second disability application seeking SSI benefits on October 5, 2010. R. 307. In this application, Ferguson claimed a disability onset date of September 9, 2009. R. 309-16. The Commissioner denied the application at the initial and reconsideration levels of administrative review. R. 210-43. On May 17, 2012, Administrative Law Judge ("ALJ") Brian B. Rippel held a hearing to consider Ferguson's disability claim.

---

[1] The Act deems a person disabled for SSI purposes "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. § 1382c(a)(3)(B).

2

R. 179-209.  An attorney represented Ferguson at the hearing, which included testimony from both Ferguson and vocational expert Robert Jackson.  R. 179-80.

On June 28, 2012, the ALJ entered his decision analyzing Ferguson's claim under the familiar five-step process[2] and denying her claim for benefits. R. 155-78.  The ALJ found that Ferguson suffered from the severe impairments of fibromyalgia, arthritis/spine disorder, personality disorder, affective disorder, anxiety disorder, substance addiction disorder, and left shoulder impairment.  R. 160-61.  The ALJ found that these impairments, either individually or in combination, did not meet or medically equal a listed impairment.  R. 161-64.  The ALJ held that Ferguson retained the residual functional capacity ("RFC") to perform light work, except that she can:

> occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl, but can never climb ladders, ropes, or scaffolds. She is limited to occasional reaching overhead with the non-dominant left upper extremity. In addition, she should avoid concentrated exposure to irritants, such as fumes, odors, dusts, gases, poorly ventilated spaces, as well as workplace hazards including unprotected heights and hazardous machinery. Further, the claimant is limited to simple, routine, and repetitive tasks, performed in a low stress work environment, involving only occasional decision making and only occasional changes in the workplace setting, with only occasional interaction with the public.

R. 164.  The ALJ determined that although Ferguson has no relevant past work experience (R. 171), she could work at jobs that exist in significant numbers in the national economy, such as a mail clerk, inspector, and packer.  R. 171-72.  Thus, the ALJ concluded that Ferguson was

---

[2] The Commissioner uses a five-step process to evaluate a disability claim.  Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002).  The Commissioner asks, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to her past relevant work; and if not, (5) whether she can perform other work.  Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983).  The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability.  The burden shifts to the Commissioner at step five to establish that the claimant maintains the residual functioning capacity, considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

Case 6:13-cv-00047-NKM-RSB   Document 35   Filed 12/08/14   Page 3 of 21   Pageid#: 2164

not disabled.  R. 172.  On July 24, 2013, the Appeals Council denied Ferguson's request for review (R. 1–7), and the present appeal followed.

Finally, Ferguson filed her third disability application on August 21, 2013, alleging an onset date of September 9, 2009.  The Commissioner awarded Ferguson benefits on this final application and established the disability onset date of August 21, 2013.  Ferguson now relies upon this disability determination to seek a remand of the present case.

## ANALYSIS

On appeal, Ferguson, acting *pro se*, does not make any specific argument as to why the ALJ erred in finding her not disabled.  Ferguson filed a brief explaining her medical problems, contending doctors have declared her disabled, and noting that she is awaiting surgery. Dkt. No. 16.  I liberally construe her brief to argue that the ALJ's decision is not supported by substantial evidence.  The court learned during the October 14, 2014 hearing that Ferguson subsequently has received SSI benefits; thus, the court also reviews whether Ferguson is entitled to a sentence six remand because of the possibility that evidence supporting her subsequent disability determination relates back to the application for benefits currently before the court. For the reasons that follow, I conclude that substantial evidence in the record supports the ALJ's conclusion that Ferguson was not disabled and that the evidence underlying her subsequent decision does not relate back to the disability determination before the court.

## Relevant Evidence Before the ALJ

Ferguson's appeal of the ALJ's decision generally challenges that substantial evidence does not support the denial of benefits.  To understand the ALJ's decision, it is necessary to review the medical evidence, the testimony at the hearing, and the opinion evidence.

4

*Medical Evidence*

Ferguson's administrative record indicates an extensive history of physical and mental impairments. The ALJ identified severe and non-severe impairments, but only the severe impairments are reviewed in detail. The ALJ found that Ferguson suffered from the severe impairments of fibromyalgia, arthritis/spine disorder, left shoulder impairment, personality disorder, affective disorder, anxiety disorder, and substance addiction disorder. R. 160-61.

The ALJ primarily recognized Ferguson's arthritis/spine disorder, which he summarized as spondylosis and degenerative disc disease of the cervical, thoracic, and lumbar spine. R. 160. Ferguson experiences pain in her lower back. R. 202-03. According to George Baylor, M.D., "light touch" alone causes pain in her spine. R. 1555. Despite this subjective statement of pain, X-rays of Ferguson's spine have shown only mild degenerative changes. R. 406-07, 412, 879, 1142. MRIs have illustrated superior endplate deformities and abnormal marrow edema within the posterior elements (R. 407); chronic Schmorl's nodes and mild compression deformities with no neurologic compromise (R. 397); and multilevel degenerative spondylosis. R. 397, 1142. From January 2011 through May 2011, Ferguson visited the emergency room six times for low back pain (R. 1176-1225, 1240-50); in May 2011, James W. Robertson, M.D. told Ferguson that her chronic pain should not be managed in the emergency room. R. 1180-81. Ferguson reports that her back pain limits her ability to sit or stand to thirty minutes. R. 196, 202-03. To manage her pain, Ferguson has been prescribed pain medication, including Soma and Tramadol. R. 1415. According to her medical records, Ferguson has not engaged in some of the recommended physical therapy, such as aqua therapy, and has expressed frustration for doctors' refusal to prescribe opiates. R. 1401.

5

Ferguson's fibromyalgia causes further pain in her neck, back, right hip, legs, and knees. R. 195-96, Dkt. No. 22-4, p. 49. John Tomarchio, M.D. of UVA Health Systems Pain Management Clinic documented Ferguson's "diffuse dull achy pain" and ordered conservative treatment of physical therapy and muscle relaxers. R. 1097-98. Nerve conduction studies at University of Virginia Health Systems proved normal. R. 395, 404. Daniel Leach, M.D. also diagnosed Ferguson with fibroymyalgia and noted that she has complained of symptoms since 2007. R. 1317-18. Dr. Leach similarly recommended a combination of medications and physical therapy. R. 1321.

Ferguson has left shoulder impairment as well, which she believes results from torn muscles. R. 196. Following a fall in October 2009, an exam at Roanoke Memorial Hospital showed decreased range of motion in her shoulder with deformity and pain. R. 896-99. X-rays did not show evidence of any abnormalities in her shoulder, such as fracture, degenerative disease, or dislocation. R. 413. However, Ferguson now cannot lift her left arm above shoulder height and has difficulty reaching. R. 196-97.

In addition to her physical impairments, Ferguson suffers from a variety of mental impairments that she contends impact her ability to work: affective disorder, anxiety disorder, personality disorder, and substance addiction disorder.

Ferguson has been diagnosed with affective disorder and anxiety disorder. R. 914-15. She disclosed at her hearing before the ALJ that she has received treatment for depression for ten years. R. 192. As of the date of the administrative hearing, Ferguson took Paxil and Abilify for her depression and testified that she cries on a daily basis. R. 194. Ferguson also explained that she has difficulty being around people and has difficulty leaving the house. R. 195. However, in a July 2011 mental status evaluation with Lily Hodges, M.D., Ferguson reported that she often

6

leaves her home three to four times each week. R. 1356. Dr. Hodges also noted that Ferguson engaged in daily activities like preparing her own meals, bathing, and talking on the phone. R. 1356. In regards to her anxiety disorder, Ferguson explained in her hearing that her panic attacks are now controlled with Lorazepam. R. 193-94. Ferguson has not reported any suicidal ideation or attempts (R. 1357), and stated she would not do anything to hurt herself. R. 900. She did report that she had attempted to hurt herself in the past. R. 901.

Dr. Hodges' mental status evaluation also shed light on Ferguson's personality disorder, reporting her tendency to lose her temper, short-term memory problems, and a limited social network. R. 1355-57. Ferguson was cooperative during the evaluation and demonstrated that her thought content, organizational ability, and task completion capability were within normal limits. R. 1357-58. Dr. Hodges did note that Ferguson "needs medication management and case management services to reduce the risk of psychiatric hospitalization." R. 1355.

Finally, Ferguson battles substance addiction disorder. She has sought treatment for alcohol abuse at emergency rooms and residential facilities (R. 191) and requested detox from alcohol at Roanoke Memorial Hospital in October 2009. R. 901. During a psychological assessment at Roanoke Memorial, she explained that she "just needs help to stop drinking." R. 901. Ferguson testified at the ALJ's hearing in 2012 that she has not consumed alcohol for over two years (R. 188). Ferguson also has a history of addiction to opiates that dates back at least fifteen years. R. 833, 1355.

In addition to these severe impairments, the ALJ noted that Ferguson's testimony and medical record showed evidence of impairments including irritable bowel syndrome, peptic ulcer disease, diverticulitis, gastro esophageal reflux disease, headache, dental pain/mouth ulcers, MRSA, sinus infection/sinusitis, gastro esophageal reflex disease, tobacco abuse, ankle sprain,

7

bronchitis, viral gastroenteritis, toothache status post extraction, heart murmur, allergic rhinitis, hyperlipidemia, streptococcal pneumonia, and hypokalemia. The ALJ found that all of these impairments were non-severe in nature. R. 161.

*Testimony Before the ALJ*

Ferguson testified at the administrative hearing on May 17, 2012 that she experienced constant back pain that extended from her neck down through her right hip and legs. R. 195. She also complained of knee and shoulder pain. R. 196. In addition to her primary back and joint pains, Ferguson told the ALJ that she suffers from migraines (R. 197-98), blurred vision (R. 199), irritable bowel syndrome (R. 200), diveriticulitis (R. 200), gastroesophageal reflux disease, and chronic obstructive pulmonary disease (R. 201). For all of her ailments, Ferguson receives relatively conservative treatment via medication for pain management, use of a cane, and reliance on a heating pad for her back. R. 195-203. She has not received or scheduled any surgeries.

As to her mental impairments, Ferguson testified that she has been treated at Bedford Mental Health for depression and anxiety for approximately ten years. R. 192. She takes multiple medications, including Paxil, Abilify, and Lorazepam. R. 192-93. Ferguson explained that she consistently feels depressed, but that she no longer has panic attacks due to Lorazepam. R. 193-94. Additionally, Ferguson alluded to her substance abuse disorder by stating that she was hospitalized for her substance abuse disorder in August 2010. R. 191-92. She reported that she had abstained from alcohol for two years prior to the hearing. R. 189.

At the hearing, the ALJ asked the vocational expert to contemplate a hypothetical individual of Ferguson's age, education, and work experience, and asked whether that person could perform the range of unskilled, light work with the additional restrictions in the RFC

Case 6:13-cv-00047-NKM-RSB   Document 35   Filed 12/08/14   Page 8 of 21   Pageid#: 2169

contained in his written decision. R. 205-06. The vocational expert concluded that the hypothetical individual could perform this level of work, which included jobs in significant numbers in the national economy such as a mail clerk or inspector grader. R. 206. The ALJ asked a second hypothetical that was the same in all respects, with the exception of a sedentary exertional level; the vocational expert again concluded that the hypothetical individual could perform work that included jobs in significant numbers in the national economy, such as a material handler. R. 207.

*Opinion Evidence*

The administrative record contains several medical opinions as to Ferguson's physical and mental functional capacity. Ferguson's physical capacity was reviewed by her treating physician Vincent Arlet, M.D, and by the state agency physicians Richard Surrusco, M.D. and Thomas Henretta, M.D. Ferguson's mental capacity was reviewed by Julie Jennings, Ph.D. for the initial decision and Howard Leizer, Ph.D. upon reconsideration.

The three opinions surrounding Ferguson's physical capacities generally are in agreement. Through a physical RFC assessment on February 15, 2011, Richard Surrusco, M.D. gave the opinion that Ferguson could perform light work with some limitations. R. 220-22. He found that she could frequently lift or carry ten pounds; occasionally carry twenty pounds; stand, walk, or sit for six hours; occasionally stoop and climb stairs; and never climb ladders or scaffolding. R. 220-21. Dr. Surrusco did not provide for any limitation on handling or feeling. R. 221. The ALJ gave Dr. Surrusco's opinion some weight because it was consistent with the other medical opinions, but not significant weight because other doctors had reviewed more recent records. R. 170.

9

Four months later on June 21, 2011, Ferguson's treating physician Vincent Arlet, M.D. completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical). R. 1372-75. Through the markings on a series of checkboxes, Dr. Arlet gave a similar opinion as Dr. Surrusco, with the exception that Ferguson could only stand, walk, or sit for four hours and that she likely would be absent from work twice per month. R. 1372-75. Although Dr. Arlet's opinion was largely comparable with the other medical opinions, the ALJ gave his opinion little weight because his estimate of two absences per month was unsupported by the medical record. R. 170.

Upon reconsideration of Ferguson's initially denied claim, state agency physician Thomas Henretta, M.D., completed a physical RFC assessment on July 7, 2011. R. 237-39. Consistent with the prior two opinions regarding Ferguson's physical capacity, Dr. Henretta limited Ferguson to standing, walking, or sitting for six hours; occasionally climbing stairs; occasionally lifting overhead on her left side; and never climbing ladders. R. 237-39. The ALJ gave significant weight to Dr. Henretta's opinion based on the supporting documentation in Ferguson's treatment records. R. 170.

Similarly, both of Ferguson's mental RFC assessments in the administrative record report complementary findings. On February 14, 2011, state agency examiner Julie Jennings, Ph.D., gave the opinion that Ferguson could engage in simple, unskilled, non-stressful work. R. 224. Dr. Jennings found that Ferguson was not significantly limited in understanding and remembering short instructions, sustaining an ordinary routine, and making simple work-related decisions. R. 222-24. However, Dr. Jennings did consider Ferguson to be moderately limited in comprehending more detailed instructions, performing at a consistent pace, and handling stressors of a competitive work environment. R. 222-24. The ALJ gave Dr. Jennings' opinion

significant weight because it was consistent with Ferguson's treatment records, which generally found that Ferguson's ability to function was normal.

During a capacity assessment performed on July 14, 2011 in support of Ferguson's request for reconsideration, Howard S. Leizer, Ph.D. concluded that Ferguson could complete simple, unskilled, and non-stressful work. R. 241. He determined that Ferguson would have moderate difficulty maintaining social functioning, concentration, and pace. R. 239-41. Dr. Leizer found that Ferguson was not significantly limited in a number of work categories as well, such as being able to carry out simple instructions and sustaining an ordinary routine without special supervision. R. 240. The ALJ gave Dr. Leizer's opinion significant weight because of its consistency with Ferguson's treatment records.

These medical claims, opinion evidence, and testimony will be considered in determining whether substantial evidence supports the ALJ's decision to find Ferguson not disabled.

### Substantial Evidence

This extensive record provides substantial evidence in support of the ALJ's decision that Ferguson was not disabled from her alleged onset date of September 9, 2009 through the date of decision on June 28, 2012. The medical evidence established the existence of a multitude of physical and mental impairments; however, the ALJ found that the evidence fails to establish corresponding functional loss rising to the level of total disability during the relevant period. The medical record shows that Ferguson was diagnosed with fibromyalgia, arthritis/spine disorder, personality disorder, affective disorder, anxiety disorder, substance addiction disorder, and left shoulder impairment, among other non-severe disorders. However, "[t]he mere diagnosis of an impairment does not establish that a condition is disabling; there must be a showing of related functional loss." Hawkins v. Astrue, C.A.8:08-3455HMHBHH, 2009 WL

3698136, at *4 (D.S.C. Nov. 3, 2009) (citing Gross v. Heckler, 785 F.2d 1163, 1165 (4th Cir. 1986)).

The ALJ undertook the five-step evaluation to review Ferguson's disability claims. He reviewed whether Ferguson (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to her past relevant work; and if not, (5) whether she can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005). Upon review of both Ferguson's physical and mental impairments, the ALJ correctly found that she suffers from severe impairments that still allow her to perform light work with limitations for her physical and mental impairments. The ALJ proceeded through steps one to four in favor of Ferguson, finding that she had not engaged in substantial gainful activity since the application date; she suffered from numerous severe impairments; she did not suffer from one or a combination of listed or similarly severe impairments; and her residual functional capacity limited her ability to work to only light work with several limitations. R. 160-64. However, the ALJ found in the fifth step that Ferguson could perform a job that existed in significant numbers in the national economy. R. 171. The ALJ's determination at step five is the subject of this appeal. Accordingly, I find that the ALJ properly based this determination on Ferguson's medical records, her lack of credibility, and his treatment of the opinion evidence.

The evidence from Ferguson's medical records reveals largely mild medical findings. Physical examinations were unremarkable and suggested that Ferguson had exaggerated her symptoms. R. 117-19, 393-99, 406-07, 1414-15. MRI records of Ferguson's spine only showed degenerative changes and spondylosis (R. 396-97, 406-07), and her range of motion was mildly limited. R. 118. The medical opinions for Ferguson's physical functioning all found that she

Case 6:13-cv-00047-NKM-RSB   Document 35   Filed 12/08/14   Page 12 of 21   Pageid#: 2173

could engage in light work, and only varied by two hours per day for how long she could work. R. 220, 237, 1372. Ferguson's records relating to her mental health similarly failed to show an impeded ability to function. Ferguson's treating psychiatrist, Dr. Hodges, noted that despite Ferguson's history of opiate dependence and legal issues (R. 1355), her mental status generally was normal and she dressed and presented normally. R. 1357. Drs. Jennings' and Leizer's opinions supported Dr. Hodges' records. R. 222-41. Perhaps most revealing, Ferguson's physical and mental impairments were treated conservatively with medication and patient education. R. 866, 1085-90. Treating physicians also recommended that Ferguson attend physical therapy, though the records appear to show that she only went to a couple of sessions. R. 432. The medical records and medical opinions suggest that Ferguson was capable of some level of work subject to limitations. R. 220-41, 1372-75.

While the notes of Ferguson's treating physicians document her subjective complaints of pain and symptoms, her "statements to physicians by way of history or complaint do not constitute objective medical evidence, and the recording of a claimant's complaints by a physician does not transform those complaints into objective clinical evidence." King v. Barnhart, 6:04CV00053, 2005 WL 3087853, at *4 (W.D. Va. Nov. 16, 2005) (citing Craig, 76 F.3d at 590 n.2). Having reviewed the limited objective medical evidence corroborating Ferguson's claim of disability and the subjective evidence which is part of the record, the ALJ found that Ferguson retained an RFC limited to light work with numerous different additional postural, environmental, and mental limitations. R. 164. Moreover, the ALJ's hypothetical questions to the vocational expert regarding jobs available to an individual of Ferguson's age, education, and work experience reasonably accounted for limitations established by the evidence. R. 171-72, 205-07. Thus, the Commissioner met its burden at step five by

13

establishing through the testimony of the vocational expert that a significant number of jobs existed of which Ferguson could perform.[3] R. 171-72.

Ferguson's subjective complaints of disabling symptoms are not conclusive. Rather, the ALJ must examine all of the evidence, including the objective medical record, and determine whether Ferguson has met her burden of proving that she suffers from an underlying impairment that is reasonably expected to produce her claimed symptoms. Craig, 76 F.3d at 592–93. A reviewing court gives great weight to the ALJ's assessment of a claimant's credibility and should not interfere with that assessment where the evidence in the record supports the ALJ's conclusions. See Shively v. Heckler, 739 F.2d 987, 989–90 (4th Cir. 1984). Given these well-established principles, and the evidence in the record before the ALJ, I decline to disturb the ALJ's finding that Ferguson's "testimony and statements describing the duration, frequency, and intensity of her symptoms is not consistent with the objective findings and observations of her various treating providers." R. 165.

Substantial evidence supports the ALJ's finding that Ferguson was not entirely credible. The record shows that Ferguson "failed to follow through with recommendations from her providers, which suggests that the symptoms may not have been as serious as has been alleged in connection with this application and appeal." R. 166-67. Notably, Ferguson failed to engage in physical therapy, which prompted one of her treating physicians, George Pop, M.D., to note that she "appears to only be interested in opiate therapy." R. 167, 1403. The ALJ also voiced

---

[3] Ferguson's suggestion to the Appeals Council that she should have been deemed disabled under Medical-Vocational Guideline Rule 201.09 is unavailing because she was not a person of "advanced age" at the time of the ALJ's decision. R. 153. On June 28, 2012, she was more than two years from aging into that category under the regulations. See 20 C.F.R. § 404.1563; 20 C.F.R. Pt 404, Subpart P, Appendix 2. See also 20 C.F.R. §§ 404.1563(b) & 416.963(b) ("If you are within a *few days to a few months* of reaching an older age category…we will consider whether to use the older age category after evaluating the overall impact of all the factors of your case."); Dunn v. Astrue, 7:11-CV-132-FL, 2012 WL 7748800, at *8 (E.D.N.C. Aug. 9, 2012) (finding that where claimant turned 55 years old almost seven months after the ALJ's decision, claimant was properly considered an "individual closely approaching advanced age").

14

concern regarding Ferguson's credibility because of her repeated requests for narcotic pain medications from emergency departments, despite her eight canceled appointments for pain management in early 2011. R. 167. The ALJ determined that Ferguson's "drug seeking behavior" had been substantiated by a number of attending physicians. R. 168. In fact, the record shows that Ferguson's physicians wished to wean her from opiates, but were unsuccessful in these efforts. R. 1401. Further undermining the credibility of Ferguson's subjective complaints are her inconsistent statements. The ALJ noted that Ferguson inaccurately reported to Dr. Hodges that she had not consumed alcohol for two years, despite a hospitalization only a year prior for alcohol abuse. R. 169. Moreover, Ferguson's self-reported activities suggested less than debilitating symptoms from her ailments. Ferguson said that she leaves her home three to four times each week, prepares meals, and sees people every day. R. 1356. One might expect a more truncated list of daily activities with as severe of impairments as alleged.

Substantial evidence supports the ALJ's treatment of opinion evidence in the record. Drs. Henretta, Surrusco, and Arlet largely provided similar medical opinions regarding Ferguson's physical functioning ability. Although the ALJ gave less weight to Ferguson's treating physician because one of his opinions was unsupported by treatment records, the ALJ noted that Dr. Arlet's "opinion is generally consistent with Dr. Henretta's opinion," which received the most significant weight. R. 170. Regarding the medical opinions for Ferguson's mental impairments, the ALJ gave both Dr. Jennings' and Dr. Leizer's opinions significant weight because they were consistent with each other and the medical record.

The ALJ generally accepted the opinions of Ferguson's physical and mental impairments, but he found that these opinions and the medical record did not support a finding of a disability. Moreover, the ALJ formulated an RFC more restrictive than any individual medical opinion.

R. 164. This analysis reflects reasoned consideration of the medical opinions in relation to the entire record. The RFC properly accounted for all of Ferguson's physical and mental limitations established by the medical evidence. I find no error in this analysis and find that substantial evidence supports the ALJ's evaluation of the medical opinions of record.

In support of her claim, Ferguson submitted to the Appeals Council and this court various additional evidence.[4] R. 2, Dkt. No. 21-22. With the exception of two records, all of the evidence is dated after the ALJ's decision on June 28, 2012.[5] "[I]n order for the court to properly grant a remand due to additional evidence, the additional evidence must be new, material *and relate to the period on or before the date of the ALJ's decision*." Duncan v. Astrue, 1:09CV00042, 2010 WL 723710, at *18 (W.D. Va. Feb. 26, 2010) (emphasis added) (citing Wilkins v. Secretary of Dep't of Health & Human Servs., 953 F.2d 93, 95–96 (4th Cir.1991)).

Ferguson provides no explanation as to how this evidence relates back to her condition during the relevant period—on or before June 28, 2012, the date of the ALJ's opinion. As for the two records that predated the ALJ's opinion, Central Virginia Community Services' psychological evaluation from June 19, 2012 (Dkt. No. 22-1, p. 5) and Dr. George Baylor's progress note from June 6, 2012 (Dkt. No. 22-3, p. 27-29), the evidence appears to be cumulative with the same providers' other records already before the ALJ. Compare Dkt. No. 22-1, p. 5 and Dkt. No. 22-3 with R. 178. There appears no reasonable possibility that the new evidence would have changed the outcome of this case, and thus remand is not warranted for consideration of this evidence.

---

[4] Ferguson delivered additional records to this Court; the Clerk's Office determined that the majority of the records were previously filed in this case. Dkt. No. 21.

[5] As the Appeals Council properly explained to Ferguson when denying review of her claim: "The Administrative Law Judge decided your case through June 28, 2012. This new information is about a later time. Therefore, it does not affect the decision about whether you were disabled beginning on or before June 28, 2012." R. 2.

## Subsequent Disability Finding

Ferguson raises for the first time in this court that she received a favorable decision awarding her disability benefits on February 24, 2014 and that this decision constitutes new and material evidence that warrants remand of this case for reconsideration by the ALJ under sentence six of 42 U.S.C. § 405(g). I ordered the Commissioner to supplement the record with Ferguson's Disability Determination Explanation for her award of benefits from the Social Security Administration ("SSA"). Dkt. No. 26, 31. The Commissioner supplemented the record with both the Notice of Award (Dkt. No. 29) and the Disability Determination Explanation. Dkt. No. 33. Neither Ferguson nor the Commissioner submitted the evidence before the disability examiner in the third application. Rather, I only have the benefit of the listing of the particular evidence submitted in that claim. Having considered the subsequent favorable decision and underlying disability determination, I find that remand is not warranted based upon the finding that Ms. Ferguson is disabled in her third application.

On August 21, 2013, Ferguson filed a new claim for SSI, alleging the same onset date of September 9, 2009 (the "new" or "subsequent claim").[6] Ferguson submitted additional evidence in support of her new claim, including medical records from August 26, 2008 through February 21, 2014. On February 24, 2014, the Commissioner declared Ferguson disabled with an onset date of August 21, 2013, over one year after the ALJ's denial in this action. Dkt. No. 29.

The Commissioner relied upon the functional capacity report of Luc Vinh, M.D. to develop an RFC that Ferguson was capable of a limited range of sedentary work, limiting her to standing/walking for four hours in an eight-hour day, frequently lifting a maximum of ten pounds, and sitting for six hours in an eight-hour day. Dkt. No. 33, p. 8-10. Ferguson also was

---

[6] The Court was not provided the records submitted by Ferguson to the Commissioner in support of her subsequent claim. The only evidence available to the Court is the Notice of Award and Disability Determination Explanation, which summarizes the evidence received by the Commissioner in the subsequent claim.

Case 6:13-cv-00047-NKM-RSB   Document 35   Filed 12/08/14   Page 17 of 21   Pageid#: 2178

limited to performing simple/routine work. This functional assessment was similar in most material respects to the functional assessments of Drs. Surrosco and Henretta, on which the ALJ relied to develop Ferguson's RFC in this matter. The Commissioner provided very little analysis in its Findings of Fact and Analysis of Evidence. Dkt. No. 33, p. 7. The decision does not make any reference to the application for benefits currently before the court, with the exception of noting the prior electronic filings. Dkt. No. 33, p. 2.

The Commissioner determined that Ferguson was only partially credible and that the objective medical evidence did not substantiate her statements of the intensity, persistence, and functionally limiting effects of her symptoms. Significantly, the Commissioner found that Ferguson did not have a substance abuse disorder despite drug addiction and alcoholism having been established in her prior denial. The Commissioner appeared to rely upon a report dated August 8, 2008 of Bruce Sellers, Ph.D. to determine that she was incapable. Neither Ferguson nor the Commissioner provided the report of Dr. Sellers or explained why the report–which was prepared prior to the denial of the original disability application–was not part of the record in this case. The Commissioner determined Ferguson disabled as of August 21, 2013, approximately one month after the Appeals Council denied review of Ms. Ferguson's second disability claim.

 "A claimant seeking a remand on the basis of new evidence . . . must show that the evidence is new and material and must establish good cause for failing to present the evidence earlier." Wilkins, 953 F.2d at 96 n. 3. See also Borders v. Heckler, 777 F.2d 954, 955 (4th Cir. 1985). Evidence is new if it is not duplicative or cumulative; it is material if there is a reasonable possibility it would have changed the outcome of the Commissioner's decision. Wilkins, 953 F.2d at 96. The Appeals Council will consider the additional evidence "only where it relates to the period on or before the date of the [ALJ's] hearing decision." Id. (citing 20 C.F.R.

§ 416.1470(b)).  Ferguson has the burden of demonstrating that a remand is appropriate given any new and material evidence.  Meadows v. Astrue, Civ. Action No. 5:08cv01129, 2010 WL 1380117, at *3 (S.D. W.Va. Mar. 31, 2010).

Courts in this district have addressed on several occasions whether a subsequent favorable disability decision constitutes sufficient grounds for a remand.  Compare Phillips v. Astrue, Case. No. 7:12cv194, 2013 WL 485949, at *3-4 (W.D. Va. Feb. 5, 2013) (finding remand based simply upon a subsequent finding of disabled to be an incorrect application of the law); with Hayes v. Astrue, 488 F. Supp. 2d 560, 565 (W.D. Va. 2007) (holding that a subsequent favorable finding of disability may itself constitute new and material evidence warranting remand where the record does not reflect whether the new favorable decision relied upon additional evidence).  The Fourth Circuit has stated in an unpublished opinion that "a subsequent favorable decision itself, as opposed to the evidence supporting the subsequent decision, does not constitute new and material evidence under § 405(g)."  Baker v. Comm'r of Soc. Sec., No. 12-1709, 2013 WL 1866936, at *1 n.1 (4th Cir. May 6, 2013) (quoting Allen v. Comm'r of Soc. Sec., 561 F.3d 646, 653 (6th Cir. 2009)).  Thus, no question exists that a remand is warranted if additional evidence submitted in support of a subsequent favorable decision is considered new and material to the initial application, and the claimant had good cause for not submitting the evidence in the prior proceeding.  See, e.g., Allen, 561 F.3d at 653-4 (6th Cir. 2009) ("[R]emand would be appropriate based on [a] subsequent favorable decision only if the subsequent decision was supported by new and material evidence that [a claimant] had good cause for not raising in the prior proceeding."); Sayre v. Astrue, Civ. No. 3:09–01061, 2010 WL 4919492, at *4 (S.D. W.Va. Nov. 29, 2010) (remanding upon finding that the evidence underlying a subsequent determination was new and material); cf. Hayes, 488 F. Supp. 2d at 565

(W.D. Va. 2007) (holding that a subsequent decision may be considered new and material evidence depending upon the nature of the evidence supporting the subsequent decision).

Here, the records which formed the basis of the disability finding were generated either before the second disability application or well after the Appeals Council denied review of that claim. See Dkt. No. 33, p. 2-6. Ferguson has provided no explanation to establish that good cause exists for not including those records existing prior to the Appeals Council decision as part of the second disability application. Likewise, Ferguson has not explained how any of the records dated after the Appeals Council's decision would relate back to the relevant period in this matter and thus would be material to this application. Accordingly, I do not find that a remand is appropriate based upon either the subsequent award of disability or the underlying evidence supporting that award.

## CONCLUSION

In this civil action, the court's role is limited to determining whether the Commissioner's decision is supported by substantial evidence and whether the Commissioner's subsequent disability determination merited a sentence six remand. In this case, substantial evidence supports the ALJ's opinion and the evidence underlying the subsequent decision does not merit a remand. In recommending that the final decision of the Commissioner be affirmed, I do not suggest that Ferguson is totally free from pain and distress. The objective medical record simply fails to document during the relevant period the existence of conditions that would reasonably be expected to result in total disability from all forms of substantial gainful employment. It appears that the ALJ properly considered all of the objective and subjective evidence in adjudicating Ferguson's claim for benefits and in determining that her physical and mental impairments would not prevent her from performing any work. Substantial evidence supports the ALJ's

decision on all grounds. For these reasons, it is **RECOMMENDED** that an order be entered **AFFIRMING** the final decision of the Commissioner, and **GRANTING** summary judgment to the defendant, and **DISMISSING** this case from the court's docket.

The Clerk is directed to transmit the record in this case to Norman K. Moon, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objection.

Enter:  December 8, 2014

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge